**SIGNED THIS: April 30, 2007**

_____

**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | No. 05-87521 |
| | ) | |
| Debtors. | ) | |
| ─────────────────────────────── | ) | |
| | ) | |
| COLCHESTER STATE BANK, an Illinois | ) | |
| Banking Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 06-8070 |
| | ) | |
| KIM E. PHILLIPS and MARY M. PHILLIPS, | ) | |
| | ) | |
| Defendants. | ) | |

### O P I N I O N

Before the Court is the motion for summary judgment filed by Kim E. Phillips and

Mary M. Phillips, the Debtors (individually referred to as "KIM" and "MARY" and jointly

referred to as "DEBTORS"), against Colchester State Bank (COLCHESTER), on its

Complaint seeking a determination that its debts are nondischargeable pursuant to Section

523(a)(2)(B) of the Bankruptcy Code.  For the following reasons, the Court concludes that

the motion may not be granted because there remain material facts in dispute.

**Background**

The DEBTORS were married in 1986.  MARY holds a Masters degree in business and

has worked for Western Illinois University for twenty years.  After farming with his father-

in-law for a number of years, KIM began farming on his own.  In March, 2001, KIM sought

financing from COLCHESTER to pay off a livestock and equipment loan with State Bank

of Augusta.  KIM submitted a financial statement dated March 14, 2001, showing a balance

due State Bank of Augusta of $231,000.  On March 15, 2001, COLCHESTER loaned the

DEBTORS $231,000.  Between February, 2002 and March, 2004, KIM submitted additional

financial statements to COLCHESTER, and COLCHESTER continued to loan additional

funds to the DEBTORS and to renew existing loans.  In May, 2004, the DEBTORS decided

to incorporate the farming operation, forming Phillips Farms, Inc.

The DEBTORS filed a voluntary petition under Chapter 12 of the Bankruptcy Code

on November 18, 2005.[1]  The DEBTORS scheduled secured debt in the amount of

$1,657,709.63 and unsecured debt of $787,611.08.[2]  The DEBTORS valued their real estate

at $228,000.00 and their personal property, consisting primarily of livestock, stored grain

and farm equipment at $891,192.60.  The schedules show total assets of $1.1 million, total

---

[1]On September 23, 2005, Phillips Farms, Inc., filed a Chapter 12 petition.  That case was dismissed on November 16, 2005, with the consent of the Debtor, on the motion of FARM CREDIT brought pursuant to Section 109(f).  Phillips Farms, Inc., filed a Chapter 7 petition on March 1, 2006.  The Chapter 7 Trustee received $3,000 from the sale of a truck titled in the name of the debtor/corporation and has abandoned all other assets except his right to exercise any avoidance powers.  While the schedules filed by the debtor/corporation list other property, the Debtor explains that the property belongs to the DEBTORS and is properly scheduled in their individual case because the debtor/corporation was not properly established.

[2]The DEBTORS later amended Schedule D to add $52,500, representing landlords' liens on crops for cash rent.

liabilities of $2.4 million and a negative net worth of $1.3 million.  At the date of filing,

COLCHESTER was owed the following amounts:

| Promissory Note | Balance |
|---|---|
| February 4, 2002 | $ 85,357.18 |
| March 31, 2003[3] | 204,137.19 |
| March 29, 2004 | 290,542.03 |

COLCHESTER filed an adversary proceeding against both KIM and MARY,

asserting that the above debts totaling $580,036.40 are nondischargeable pursuant to

Section 523(a)(2)(B).  The financial statements that are the subject of this Complaint are

dated March 14, 2001, February 1, 2002, December 1, 2002, and March 29, 2004.  In its

Complaint, COLCHESTER alleges that  the DEBTORS failed to pay off the operating loan

to State Bank of Augusta with the proceeds of the loan made in March, 2001, as they

represented they would do, and subsequent financial statements submitted by the

DEBTORS omitted that debt.   In addition, COLCHESTER alleges that the financial

statements omitted secured debts owing to 1st Farm Credit. The DEBTORS filed a motion

for summary judgment and the Court took the matter under advisement.

**STANDARDS FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary

proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary

judgment is proper if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with any affidavits, show that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In order to prevail

---

[3] The note dated March 31, 2003, was a renewal of the March 15, 2001 note.

on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

A creditor seeking to except a debt from discharge bears the burden of proof. *In re Scarlata*, 979 F.2d 521 (7th Cir. 1992). The creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order to afford the debtor a "fresh start," exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994).

Section 523(a)(2)(B) provides that an individual debtor is not discharged from any debt obtained by:

> (B) use of a statement in writing—
>
>> (i)   that is materially false;
>> (ii)  respecting the debtor's or an insider's financial condition;
>> (iii) on which the creditor to whom the debtor is liable for
>> such money, property, services, or credit reasonably relied; and

4

(iv) that the debtor caused to be made or published with intent
to deceive; . . . .

In order for a loan obtained by a false financial statement to be nondischargeable, a creditor

must establish each of the following five elements:  (1) the debtor made a statement in

writing; (2) the statement is materially false; (3) the statement concerns the debtor's

financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor

reasonably relied on the misrepresentation.  *Matter of Sheridan*, 57 F.3d 627 (7th Cir. 1995).

At the core of the DEBTORS' motion for summary judgment is their contention that

COLCHESTER altered the financial statements after they were submitted by the DEBTORS.

The DEBTORS argue that the financial statements, altered by COLCHESTER, cannot be

considered to be false financial statements attributable to the DEBTORS; nor could those

financial statements have been submitted by the DEBTORS with the intent to deceive

COLCHESTER.  Finally, because COLCHESTER dummied up the financial statements, a

claim of reasonable reliance could hardly be sustained.

In addition, the DEBTORS maintain that COLCHESTER cannot establish its claim

against MARY with respect to the financial statements dated March 14, 2001, and March

29, 2004, because she did not sign those statements.  The DEBTORS also contend that

COLCHESTER'S failure to conduct a further investigation, given their knowledge that the

financial statements were incomplete and inaccurate, totally defeats its claim of reasonable

reliance.

The DEBTORS further contend that the obligations representing the renewal of a

prior obligation are not nondischargeable unless COLCHESTER can establish that it

suffered a detriment by renewing those loans, such as by establishing how much it could

5

have recovered if it had taken immediate steps to collect the debt.  The DEBTORS are

incorrect.  No showing of detriment or damage is required under Section 523(a)(2)(B).

*Matter of McFarland*, 84 F.3d 943 (7th Cir. 1996).

The DEBTORS contend that there are no genuine issues of material fact and that

their motion may be decided as a matter of law.  In support of their motion, the DEBTORS

rely upon their 2004 examination transcript, copies of financial statements, and financing

statements filed by State Bank of Augusta and 1st Farm Credit.  The DEBTORS have filed

a statement of undisputed facts.  According to that statement, MARY had no real

involvement in the farming operation.  In substantiation of their claim that the financial

statement dated March 14, 2001, was altered by COLCHESTER, the DEBTORS submit a

financial statement dated March 9, 2001, claiming that it was the one submitted by KIM

and  asserting that a comparison between the two conclusively demonstrates that the later

dated statement is an "altered" copy.[4]   Likewise, the DEBTORS contend, based on the

uninitialed  interlineations and overwrites, that the financial statements dated February 1,

2002, December 1, 2002, and March 29, 2004, were also altered by COLCHESTER.

In response, COLCHESTER denies that the financial statements were altered after

they were submitted by the DEBTORS.  COLCHESTER maintains that the only changes

made to the financial statements were made in the DEBTORS' presence, at their direction

and with their knowledge and consent.  COLCHESTER asserts that the only element of its

claims against the DEBTORS which is free from dispute is its assertion that the financial

---

[4] Principal among the differences between the two financial statements are the additions of the amounts of personal property in the later financial statement of $390,900 and $32,000, and the crossing out of the debt to 1st Farm Credit in the amount of $136,000.

statements are materially false.  Attached to its response are two separate ledgers which COLCHESTER alleges were prepared by State Bank of August and 1st Farm Credit, which show the balances due on the same dates of the financial statements at issue.

As discussed below, resolution of COLCHESTER'S claims against the DEBTORS cannot be made on summary judgment.  First, the parties disagree on the part MARY played in submitting the financial statements dated March 14, 2001, and March 29, 2004, which she did not sign, and in obtaining the loans which COLCHESTER made in reliance thereon. Second, the parties strongly disagree on the events surrounding the preparation, review and execution of the financial statements.  Given the DEBTORS' contention that the financial statements relied on by COLCHESTER are not the same financial statements submitted by the DEBTORS, the determination of whether those statements were materially false cannot be made at this juncture of the case.  In addition, the Court determines that there are legitimate factual issues on the ultimate issues of intent to deceive and reasonable reliance.  The Court will need to weigh the evidence and the credibility of the witnesses in order to determine which, if any, of the debts are nondischargeable, as to either, or both, of the DEBTORS.

## 1.  Statement in Writing

In their motion for summary judgment, the DEBTORS focus upon the threshold element of Section 523(a)(2)(B), asserting that MARY neither signed either the February 1, 2002 financial statement or the December 1, 2002 financial statement, nor did she authorize KIM to sign either of them on her behalf.  MARY claims, as she testified at her 2004 examination, that she had no involvement in the farming operation and that she did not

7

do the bookkeeping for the farm.  Based on MARY'S signature on two of the financial statements submitted to COLCHESTER, as well as her signature on financial statements submitted to other creditors during this same time frame, COLCHESTER disputes MARY'S claim of exemption based on her lack of signature.

A financial statement need not be signed by the debtor in order to satisfy the threshold element of the requirement of a writing, but if the document is written by another, it must have been adopted or used by the debtor.  *In re Kaspar*, 125 F.3d 1358 (10th Cir. 1997).  As explained by Judge Lessen in *In re Hammitt*, 289 B.R. 681 (Bankr.C.D.Ill. 2001), in rejecting the debtor/wife's argument that the bank could not prevail on its claim of nondischargeability under Section 523(a)(2)(B) because she did not sign the financial statement:

> While there is no requirement under Section 523(a)(2)(B) that the debtor sign the financial statement, the debtor must affirm the writing in some respect, as by using or adopting it.  *In re Eckert,* 221 B.R. 40, 44 (Bankr.S.D.Fla. 1998). In this case, the financial statement purports to be the financial statement of both "Randy and Trish Hammitt."  Both of their 401(k) plans are listed on the statement.  The financial statement was signed by Randy Hammitt, Mrs. Hammitt's husband and partner or joint venturer in the cattle operation, and Mrs. Hammitt knew that a financial statement was required in connection with the refinancing in 1997.  Mrs. Hammitt never told the Bank that Randy did not have the authority to sign the financial statement on behalf of both of them.  Under these circumstances, the Court finds that Mrs. Hammitt "published" the financial statement by allowing her husband to sign it and submit it to [the bank].

289 B.R. at 688.  Although the debtor/wife in *Hammitt* took care of the books, this Court does not view actual participation by MARY in the farming operation as determinative. As in *Hammitt*, the financial statement dated March 9, 2001, was captioned in both KIM and MARY'S name.  Given that MARY signed two of the financial statements at issue, whether

she "adopted" or "made use" of the two financial statements she did not sign presents material disputed questions of fact.

The DEBTORS also claim that the requirement of a statement in writing cannot be satisfied under circumstances where the creditor, having received a signed financial statement by the debtor, makes changes in his or her writing on the face of that statement, based upon oral representations by the debtor. The DEBTORS are incorrect. Just because the financial statement is completed by another, does not mean that the debtor can escape liability. *In re Michael*, 265 B.R. 593 (Bankr.W.D.Tenn. 2001). Rather, the issue, as noted above, is whether the DEBTORS "adopted" or made use of the written financial statements as completed. COLCHESTER contends that the changes were made with the DEBTORS' consent. Attached to COLCHESTER'S response is a list of equipment which COLCHESTER asserts was provided by KIM when he met with its representative in March, 2001, prior to the making of the operating loan. COLCHESTER claims that the adding of those assets, valued at $390,900, to the financial statement, was hardly a unilateral alteration.

### 2. *Materially False Statement*

A financial statement is materially false if it "paints a substantially untruthful picture . . . by representing information of the type which would normally affect the decision to grant credit" or if the lender would not have made the loan "but for" the debtor's misrepresentations. *In re Morris*, 230 B.R. 352 (Bankr.N.D.Ill. 1999), *aff'd* 240 B.R. 553 (N.D.Ill. 1999), *aff'd* 223 F.3d 548 (7th Cir. 2000). As previously noted, the Court must first determine, at trial, whether the DEBTORS' claims that COLCHESTER altered the

financial statements, are true.  Assuming that it did not, as COLCHESTER claims, the

evidence supports COLCHESTER'S position that the DEBTORS owed large amounts to

State Bank of Augusta and 1st Farm Credit.  This "finding" is permissible, however, only

because the Court is required to view the evidence favorably toward COLCHESTER.

Neither of the "ledgers" attached to COLCHESTER'S response, both of which purport to

be business records of third-parties, is accompanied by any evidence of authenticity or the

other foundational requisites for admissibility of these documents as business records.[5]  If

the DEBTORS dispute that issue at trial, COLCHESTER will be required to establish those

balances by competent evidence.

### 3. *Intent to Deceive*

Because a debtor will rarely, if ever, admit to an intent to deceive, proving this

element is often the most difficult element for the creditor to prove.  In the Seventh Circuit,

in addition to direct evidence of an intent to deceive, an intent to deceive may be proved

circumstantially and may be inferred from a false representation that the debtor knows or

should know will induce another to make a loan.  *Sheridan*, 57 F.3d at 627.  An intent to

deceive may be inferred if (1) the statement is materially false; (2) the debtor knew his

statement was false or was reckless in making the false statement; and (3) knew or should

have known that the lender would be induced to make the loan as a result of the materially

false statement.  *In re Martin*, 306 B.R. 591, 605-06 (C.D.Ill. 2004).  Among the factors to be

considered are "whether the debtor was intelligent and experienced in financial matters,

---

[5]Made a part of COLCHESTER'S response is the affidavit of its President, Mark A. Reynolds, stating that all of the factual statements contained in its response and brief are true.  That statement, however, cannot overcome the complete lack of foundation for admission of a third-party's business records.

and whether there was a clear pattern of purposeful conduct." *In re McCleary*, 284 B.R. 876 (Bankr.N.D.Iowa 2002).

Both MARY and KIM deny that they intended to deceive COLCHESTER. MARY, relying on lack of involvement in the farming operation, contends that there is no evidence of any wrongdoing on her part. KIM claims that COLCHESTER, eager to grant him loans, advised him that he would have to omit certain debts in order for the loans to go forward. COLCHESTER contends that the DEBTORS' intent to deceive may be proved by evidence of their knowledge of their significant negative net worth at the time they provided false financial statements showing exactly the opposite – a significant positive net worth.

Issues of intent can rarely be resolved by summary judgment. *In re Canyon Systems Corp.*, 343 B.R. 615 (Bankr.S.D.Ohio 2006). The question of intent to deceive is intensely one of fact, making the debtor's credibility a very important factor. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975). At trial, the Court will have the opportunity to evaluate both the DEBTORS' credibility and that of COLCHESTER'S representatives and to determine whether the DEBTORS' statements of honest intent or KIM'S accusations of shenanigans by COLCHESTER'S representatives should be accepted as true. [6]

**4. *Reasonable Reliance***

The element of reasonable reliance calls for a twofold inquiry. The creditor must establish that it actually relied upon the financial statement and that its reliance was reasonable. *Mayer v. Spanel Intern. Ltd.*, 51 F.3d 670 (7th Cir. 1995); *In re Kreps*, 700 F.2d 372

---

[6]This is presuming, of course, that COLCHESTER establishes the threshold requirement of a "statement in writing" with respect to both DEBTORS and as to each of the financial statements.

(7th Cir. 1983). The reasonableness of a creditor's reliance should be determined on a case by case basis, in light of the totality of the circumstances. *Matter of Bonnett*, 895 F.2d 1155 (7th Cir. 1990); *Matter of Harasymiw*, 895 F.2d 1170 (7th Cir. 1990). Even partial reliance, established when the lender demonstrates that the false financial statement was a substantial factor in granting the loan, may suffice. *In re Capelli*, 261 B.R. 81 (Bankr.D.Conn. 2001); *In re Scarpinito*, 196 B.R. 257 (Bankr.E.D.N.Y. 1996). The following three factors are appropriately considered in assessing whether a creditor's reliance was reasonable:

> 1. The creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices);

> 2. The standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and

> 3. The surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*In re Cohn*, 54 F.3d 1108, 1117 (3d Cir. 1995). Where the debtor and the creditor have an ongoing relationship which has given rise to a relationship of trust, a creditor's reliance may be deemed reasonable without additional verification. *Matter of Bogstad*, 779 F.2d 370 (7th Cir. 1985); *In re Watson*, 2003 WL 21241702 (10th Cir.BAP 2003). But a creditor, confronted with obvious errors or glaring inconsistencies, must inquire further or its reliance will be unreasonable. *Bogstad*, 779 F.2d at 372 n4. Where the creditor has in its possession a prior financial statement that contradicts the financial statement at issue, a red

12

flag is raised so that if the creditor does not take reasonable steps to obtain further information to reconcile the inconsistency, the reasonableness of its reliance is brought into question. *In re Turner*, 358 B.R. 422 (Bankr.N.D.Okla. 2006).

The DEBTORS contend that COLCHESTER cannot sustain its burden of proving that it reasonably relied on the financial statements. They say that COLCHESTER'S reliance on the financial statements was not reasonable because, based on the numerous strike-outs and overwrites, it had to know that the statement was deficient. The DEBTORS suggest that the financial statements were taken as a mere formality and, pointing to the limited space on the form itself, assert that COLCHESTER was not seeking a comprehensive disclosure of all the DEBTORS' liabilities and did not make its decision to extend credit based on those financial statements. The DEBTORS also contend that had COLCHESTER conducted a minimal investigation it would have easily discovered the amounts owing to State Bank of Augusta and 1st Farm Credit.

In response, COLCHESTER maintains that, in extending credit to the DEBTORS, it reasonably relied upon the false financial statements and that this issue presents a genuine issue of material fact which requires a trial. COLCHESTER notes that prior to making the loans at issue, it had made eight small loans to the DEBTORS and that the DEBTORS had established a good payment record. In addition, COLCHESTER maintains that in March, 2001, it questioned KIM regarding the financing statements which had been filed by 1st Farm Credit and was advised that the indebtedness consisted primarily of the mortgage on the DEBTORS' home, along with a debt of $14,900 for a farm shed and of $11,700 for a bat wing mower.

In addition, this is a case where a lender obtained a number of financial statements over a period of time and made a number of loans or renewals during that period. COLCHESTER'S Complaint fails to tie each loan or renewal in question to a particular financial statement. Ordinarily, a lender who makes a loan or renewal to a borrower with whom it has such a history, is charged with relying on the most recent financial statement in its possession — a prior financial statement is supplanted by a newer one and the prior one is no longer "eligible" for reasonable reliance. COLCHESTER must link each loan or renewal that it seeks to except from discharge to a particular financial statement. Claimed reliance on any statement other than the most current one will be subject to strict scrutiny.[7]

In their reply to COLCHESTER'S response, the DEBTORS argue that the response should be stricken based on its failure to comply with the local rules of the District Court for the Central District of Illinois, requiring a respondent to specifically identify which of the facts set forth by the movant are disputed and to set forth in a separate list any additional material facts. In addition, the DEBTORS note that COLCHESTER has failed to identify specific portions of the record which demonstrate the existence of a genuine issue of fact. Given the nature of the issues here, and the obvious existence of genuine issues of material fact, striking COLCHESTER'S response would be unduly harsh and pointless.

On the issue of reasonable reliance, it is abundantly clear that the motion for summary judgment filed by the DEBTORS and COLCHESTER'S response to that motion establish that genuine issues of material fact concerning whether COLCHESTER actually

---

[7]It is generally not sufficient for a lender to prove merely that a series of financial statements were all incomplete or incorrect and claim that therefore all of its loans should be nondischargeable. The reasonable reliance element of Section 523(a)(2)(B) must be applied to each loan or renewal on an individual basis.

14

relied on the financial statements in granting the various loans and whether that reliance was reasonable.  Summary judgment is inappropriate in this case.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###